IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

CHERYL G. HOLMAN                                      PLAINTIFF

V.                              NO. 09-3084

MICHAEL J. ASTRUE,
Commissioner of Social Security Administration            DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Cheryl G. Holman, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security administration (Commissioner) denying her claim for supplemental security income (SSI) benefits under the provisions of Title XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

**I.  Procedural Background:**

Plaintiff protectively filed a SSI application on July 2, 2004, alleging disability since October 31, 2003, due to neck, shoulder and facial pain, headaches and fibromyalgia.  (Tr. 40, 69).  An administrative hearing was held on April 17, 2007, at which Plaintiff appeared with counsel and testified.  (Tr. 247-291).

By written decision dated July 17, 2007, the ALJ found that during the relevant time

-1-

period , Plaintiff had an impairment or combination of impairments that were severe:  status post

motor vehicle accident October 2003; fibromyalgia; hypertension; and depression.  (Tr. 13).

However, after reviewing all of the evidence presented, she determined that Plaintiff's

impairments did not meet or equal the level of severity of any impairment listed in the Listing

of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 14).  The ALJ found

Plaintiff retained the residual functional capacity (RFC) to perform:

> light work (lift and carry 20 pounds occasionally and 10 pounds frequently;  she can
> stand or walk for 6 of 8 hours in a work day;  she can sit for 6 of 8 hours in a work day)
> except she is limited to non-complex simple instructions, using little judgment, routine
> and repetitive; learned by rote with few variables.  She is limited to superficial contact
> incidental to work with the public and co-workers.  She needs concrete, direct, and
> specific supervision.

(Tr. 15).  With the help of a vocational expert, the ALJ determined Plaintiff could perform other

work, such as poultry dresser, hotel or motel maid, and shirt presser.  (Tr. 18-19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

denied that request on October 5, 2009.  (Tr. 4-6).  Subsequently, Plaintiff filed this action.

(Doc. 1).  Both parties have filed appeal briefs, and this case is before the undersigned upon

consent of the parties.  (Doc. 5, 7, 8).

## II.  Evidence Presented:

At the administrative hearing on April 17, 2007, Plaintiff testified she graduated from

high school and completed two and a half years of college.  (Tr. 253).  Plaintiff was involved in

a motor vehicle accident in October of 2003, when she was rear ended and thrown into the

steering wheel.  (Tr. 262).  She did not initially go to the hospital because she felt she was

alright.  (Tr. 263).  Soon thereafter, she began having neck and right shoulder pain, and thoracic

and lumbosacral pain.  On January 14, 2004, she saw Dr. Kevin Richter, at Boston Mountain Rural Health Center, Inc., for the pain, stating that she had been going to a chiropractor without significant benefit, although it helped some.  (Tr. 149).  X-rays revealed mild osteoarthritis and a normal lumbar spine series.  (Tr. 150).

On July 13, 2004, Plaintiff saw Dr. Ivan Box at the Huntsville Clinic, for her back and neck pain.  (Tr. 153).  Dr. Box noted that Plaintiff had a head CT, which was negative.  He assessed her with depression and osteoarthritis.  (Tr. 153).  He also indicated that she may need to see a rheumatologist.  (Tr. 153).  Plaintiff saw Dr. Box again on July 29, 2004, and was in pain and seeking medication to help her relax.  (Tr. 152).  Dr. Box then assessed her with fibromyalgia and osteoarthritis.  (Tr. 152).

On August 25, 2004, Plaintiff was seen at Ozark Guidance Center, Inc. (OGC).  (Tr. 167-170).  At that time, she indicated she had taken Lexapro for two or three weeks and felt more irritable and stopped taking it.  OGC diagnosed Plaintiff with major depressive disorder, hypertension, chronic pain, and was given a GAF score of 50.  (Tr. 169-170).

Plaintiff saw Dr. Box a third and final time on August 26, 2004, and was still having a lot of pain in her back, legs, neck and shoulder.  She also needed a prescription for depression, as recommended by OGC.  Dr. Box assessed Plaintiff with fibromyalgia; depression; osteoarthritis; and asthma.  He noted that Plaintiff was "unable to do physical work.  Poor concentration and memory prevents other employment."  (Tr. 151).

Plaintiff received individualized therapy at OGC six times between September 2, 2004 and November 29, 2004.  (Tr. 157-165). At the October 18, 2004 visit, Plaintiff reported that she was not taking any anti-depressant medications because "Dr. Box prescribed a new one and she

-3-

AO72A
(Rev. 8/82)

hasn't been able to pick it up from the pharmacy yet." At that same session, Plaintiff reported being out of her blood pressure medications because Dr. Box did not write her a prescription for it. (Tr. 159). It was recommended that she not delay getting back on the medications and calling her doctor's office about it.

On October 18, 2004, Dr. Donald Clay of OGC assessed Plaintiff with depressive disorder, mixed personality traits, fibromyalgia and a history of hypertension, and was given a GAF score of 58. (Tr. 158).

A Physical RFC Assessment was completed by Dr. Steve Owens on November 17, 2004. Dr. Owens found that Plaintiff could: occasionally lift and/or carry (including upward pulling) 50 pounds; frequently lift and/or carry (including upward pulling) 25 pounds; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; and push and/or pull(including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry. (Tr. 200). He also found that no postural, manipulative, visual, communicative or environmental limitations were established. (Tr. 201-203). He noted that there was a FMS (fibromyalgia syndrome) diagnosed, with very little treatment. He also noted "MVA in early '04 with back stain[sic]. Mild OA of C-spine, by x-ray." (Tr. 206).

On March 1, 2005, Plaintiff attended group therapy at OGC and stated that she was not on any anti-depressants because of the adverse effects she had with some of them. She also said she had high blood pressure and was still not taking medications for this. (Tr. 236). In a March 20, 2005 group session, Plaintiff stated that she had stopped taking Cymbalta and that she felt better without anti-depressants. She stated that she continued to have chronic pain and that her

-4-

chiropractor was not helping.  (Tr. 233).

Plaintiff returned to see Dr. Kevin Richter on March 31, 2005, and was assessed with chronic pain, fibrositis, hypertension, and depression.  (Tr. 219).  On April 14, 2005, Plaintiff returned to see Dr. Richter for re-evaluation of her chronic pain and Dr. Richter noted that Plaintiff's cervical and lumbar films were "within normal limits aside from some mild osteoarthritis noted on cervical spine."  (Tr. 218).  He assessed her with chronic pain, possible fibromyalgia and hypertension.  (Tr. 218).  Plaintiff saw Dr. Richter again on April 26, 2005, and was assessed with probable fibromyalgia, major depression and hypertension.  (Tr. 217).

At her May 12, 2005 visit to Dr. Richter, Plaintiff had just started Effexor XR and Pamelor, which was helping her sleep but causing excessive dry mouth.  (Tr. 216).  She was assessed with fibromyalgia and depression.

On June 3, 2005, upon referral from Dr. Richter, Plaintiff was seen by Dr. Cathy C. Luo, who specializes in pain management, to assist with Plaintiff's pain management.  (Tr. 171-172).  Plaintiff told Dr. Luo that she was ruled out for rheumatoid arthritis, that she had different side effects from medications, that she gradually developed depression, and that she received group therapy, but it did not help her.  (Tr. 171).  She also told her that she was treated by a chiropractor, which gave her minimum improvement.  Dr. Luo found that Plaintiff's muscle strengths in her bilateral upper and lower extremities were 5/5 and that the ranges of motion were within normal limits.  (Tr. 172).  She found tenderness to palpation in her cervical, lumbar, and thoracic paraspinal muscles and bilateral trapezius, left rhomboid muscles, and other tender points including elbow, knee, gluteal area, and front chest second rib.  (Tr. 172).  Sensation was intact and muscle stretch reflexes were 2+ in all extremities.  Dr. Luo's impression was:

-5-

Fibromyalgia syndrome and depression. (Tr. 172). Dr. Luo recommended Plaintiff go to physical therapy and that she do some trigger point injections. An injection was given that same day. (Tr. 172). There are no medical records indicating that Plaintiff underwent physical therapy or received subsequent injections.

On June 21, 2005, Plaintiff reported in her group therapy session that she was angry about going to doctors and taking medication they recommend and it making her feel worse. She indicated she may stop taking any medication because of this. (Tr. 226). On July 12, 2005, she reported to the group that she was feeling better since she stopped taking all of the medication and said that "she has no intention to take them again." (Tr. 225).

On December 9, 2005 W. Charles Nichols, Psy.D., of The Family Psychological Center, P.A., prepared a Mental Status and Evaluation of Adaptive Functioning report as requested by the agency. (Tr. 173-177). During the evaluation, Plaintiff denied she took any prescription medications and reported taking Skelaxin until running out and being unable to afford a refill. (Tr. 173). She stated that she had approximately 15 visits at OGC before ending treatment because she "didn't feel like it really helped a lot, and I couldn't afford it." Dr. Nichols diagnosed Plaintiff with pain disorder, personality disorder, back, shoulder, and leg pain and was given a GAF score of 51. (Tr. 176). Dr. Nichols stated that the Plaintiff's current psychological condition was "likely to directly fluctuate with her physical condition." (Tr. 177). He also found that Plaintiff was able to comprehend and remember simple directional sequences and would likely be able to interact appropriately. (Tr. 177).

On December 19, 2005, OGC discharged Plaintiff from its care, indicating that Plaintiff lost contact and the last face to face was August 9, 2005, that the prognosis was guarded, her

-6-

depression and chronic pain were unimproved, and that her current GAF was 50.  (Tr. 223).

Although there are no records reflecting treatment from a physician for her pain or other physical conditions since Dr. Luo evaluated her on June 3, 2005, Plaintiff was seen by a chiropractor, Francis Sevcik, D.C., subsequent thereto.  In an undated report of Plaintiff's recent medical treatment, Plaintiff reported that on March 23, 2007, she saw Dr. Sevcik in Huntsville, and that she was told by Dr. Sevcik that her condition was "non-curable" and that treatment just provided temporary relief from pain.  (Tr. 145).  In a letter dated April 29, 2007, Dr. Sevcik stated that she saw Plaintiff regularly since her first visit about thirteen years ago, and that the motor vehicle collision several years ago basically aggravated her overall condition considerably. Dr. Sevcik concluded that Plaintiff hurt all over her body, some days worse than others, and that relatively small doses of stress or strain seemed to greatly aggravate her pain.  Dr. Sevcik further stated: "Her blood pressure with headache episodes in conjunction with her fibromyalgia, tendonitis, depression, and overall painful condition are very debilitating and limiting." (Tr. 239, 242, 246).

At the hearing held on April 17, 2007, Plaintiff testified that her arms swelled up and the veins in her hands and arms "stuck up" if she ever used them much.  (Tr. 261-262).  She stated that she was stiff all over and that she could not turn her neck very well part of the time.  (Tr. 263).  She stated that her arms and legs went to sleep on her and that she was always tired.  (Tr. 263).  She stated that she took injections in the muscles in her back and wished that she had not because she noticed no improvement and it did not help the pain.  (Tr. 264).  Plaintiff stated that she was not taking any pain medications because they did not help and made it worse, and that she had pain all over.  (Tr. 264-265).  She stated that she could not stay on her computer long

-7-

because her back bothered her and her legs would go to sleep.  (Tr. 266).  She stated that she could stay on her riding mower 15 or 20 minutes, took her trash to the recycler once a month and did her own laundry.  (Tr. 267, 269).  She stated that she was not still going to OGC and was not taking any medications for depression because she felt more irritable on those medications.  (Tr. 276-277).

## III.  Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001);  see also 42 U.S.C. §§423(d)(1)(A),

-8-

1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**IV. Discussion**

The Court is troubled by the fact that on August 26, 2004, Dr. Box, who treated Plaintiff three times in 2004, stated that Plaintiff was unable to do physical work, and by letter dated April 29, 2007, Plaintiff's chiropractor, Dr. Sevcik, who had treated Plaintiff for several years, stated that Plaintiff's blood pressure with headache episodes in conjunction with her fibromyalgia, tendonitis, depression, and overall painful condition were "very debilitating and limiting." Nevertheless, the ALJ gave little weight to the opinion of Dr. Box, because it was "in the form

-9-

of conclusions only and did not explain the basis of the conclusions." The ALJ also gave little weight to the opinion of Plaintiff's chiropractor because "he has a monetary motivation to continue to treat the claimant and to maximize her disability and therefore little weight is given to his opinion." (Tr. 18). The only other record relevant to Plaintiff's physical abilities is the November 17, 2004 Physical RFC Assessment completed by non-examining physician Steve Owens, who concluded that Plaintiff would be able to perform medium work.

"A treating source's opinion is to be given controlling weight where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other substantial evidence in the record." Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003), paraphrasing 20 C.F.R. §404.1527(d)(2). When presented with a treating physician's opinion, the ALJ is obligated to examine the nature and extent of the treatment relationship, attributing weight to such an opinion that is proportionate to the knowledge that the medical provider has about the Plaintiff's impairments. 20 C.F.R. §416.927(d)(2)(ii). Additionally, the ALJ must either attempt to reconcile the medical reports of the treating physicians with those of the consulting physicians, or direct interrogatories to each of the physicians to obtain a more substantiated opinion of the Plaintiff's capabilities and the onset of her disabilities. See Smith v. Schweiker, 728 F.2d 1158, 1164 (8th Cir. 1984); O'Leary v. Schweiker, 710 F.2d 1334, 1342 (8th Cir. 1983); Funderburg v. Bowen, 666 F. Supp. 1291, 1298-1299 (W.D. Ark. 1987). The Court does not find the ALJ's reasons for substantially discounting the opinions of Dr. Box and Dr. Sevcik with respect to Plaintiff's physical abilities to be persuasive. Dr. Box, as a physician,

-10-

is capable of assessing Plaintiff's physical abilities.[1]  Dr. Sevcik, although not a medical doctor,
treated Plaintiff for thirteen years.  The ALJ may use evidence from a chiropractor to show the
severity of Plaintiff's impairments and how it affects her ability to work.  20 C.F.R. §
404.1513(d)(1).  The fact that Dr. Sevcik might benefit monetarily from treating Plaintiff is not
sufficient reason to totally discount Dr. Sevcik's opinion.

The Eighth Circuit Court of Appeals has recognized that fibromyalgia is a chronic
condition which is difficult to diagnose and may be disabling.  Pirtle v. Astrue, 479 F.3d 931,
935 (8th Cir. 2007), citing Garza v. Barnhart, 397 F.3d 1087, 1089 (8th Cir. 2005) (per curiam).
 In this case, Dr. Box and Dr. Sevcik treated Plaintiff more than once, whereas Dr. Steve Owens
was a non-examining physician.  Since the latest physical RFC by Dr. Owens occurred in 2004
and Sevcik opined Plaintiff's condition was debilitating and limiting in 2007, the Court is not
persuaded that substantial evidence supports the ALJ's findings.

The Court believes it would have been helpful if the ALJ had asked Dr. Richter or Dr.
Box to complete a physical RFC assessment.   At the very least, the ALJ should have either
directed interrogatories to Plaintiff's treating physicians or obtained a physical RFC assessment
from a consultative examining physician.  The Court believes a more recent physical RFC
assessment should be obtained, either by Plaintiff's treating physician or by a consultative
examining physician.  Once obtained, the ALJ should then re-evaluate Plaintiff's RFC.

**V.  Conclusion**

Based upon the foregoing, the Court concludes that the ALJ's decision is not supported

---

[1]The Court recognizes that Dr. Box may not be able to diagnose Plaintiff's mental abilities, as Plaintiff argues, but
he is able to diagnose Plaintiff's physical abilities.

-11-

by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 10th day of January, 2011.


/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-12-